IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEFANIE D. MASON,                  :
                                    :
       Plaintiff,             :
                                    :
v.                                  :     Civ. No. 15-1191-LPS
                                    :
STATE OF DELAWARE (J.P. COURT),     :
et al.,                             :
                                    :
       Defendants.            :

---

Stefanie D. Mason, Newark, Delaware, Pro Se Plaintiff.

Joseph Clement Handlon, Deputy Attorney General, and Adria Benner Martinelli, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendants.

**MEMORANDUM OPINION**

September 17, 2018
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Stefanie D. Mason ("Plaintiff") filed this action alleging employment discrimination by reason of a disability. (D.I. 2) She proceeds *pro se*. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff filed a Second Amended Complaint following dismissal of the original Complaint and the Amended Complaint. (D.I. 29, 30, 32) Presently before the Court is Defendants' motion to dismiss and Plaintiff's opposition. (D.I. 35, 38)

## II. BACKGROUND

The Second Amended Complaint contains the following allegations. (D.I. 32) Plaintiff began her employment with Defendant State of Delaware Justice of the Peace Court ("JP Court") in May 2004 as a judicial case processor I. A member of the United States Army Reserve, Plaintiff was deployed in September 2004, March 2007, and October 2009. In each instance she returned to her employment with the JP Court. During her last deployment, Plaintiff was seriously injured and hospitalized from April 2010 until February 2013. Upon her discharge from the hospital, Plaintiff was medically retired from the military.

In May 2013, Plaintiff sought to return to work and requested information from Defendant HR Manager Debbie Manelski ("Manelski") about an ADA accommodation. Plaintiff met with Manelski in June 2013 to fill out paperwork; she then returned to work in June, was transferred to the voluntary assessment center, and promoted to judicial case processor II. She was given the tasks of opening mail and adding payments into the system, tasks she performed from June 2013 to February 6, 2015.

Between July 2013 and December 2014, Plaintiff contacted Defendant supervisor Jeannie Kruiser ("Kruiser") "to have additional work as the other employees." (D.I. 32 at ¶ 15) Plaintiff

1

filed an EEOC complaint on December 18, 2014 and alleges that she informed Manelski and Defendant Michael Oliver ("Oliver") about the complaint on December 19, 2014.

Plaintiff alleges that she was forced to have weekly ADA meetings from March 2015 until July 1, 2015, and during the ADA meetings she received verbal and written reprimands. Plaintiff alleges that when she met with Oliver, Manelski, and Defendant Mark Hitch ("Hitch") on April 17, 2015, she told them she found the meeting offensive. On June 26, 2015, Plaintiff told Hitch and Defendant Supervisor Staci Dutton ("Dutton") that she wanted to stop the meeting because she found the ADA meetings offensive.

Plaintiff alleges that during the July 1, 2015 ADA meeting, Hitch pinned her between the door and doorframe. Exhibits submitted by Plaintiff include a transcript of the July 1, 2015 meeting between Plaintiff and Hitch when Hitch counselled Plaintiff on failing to follow directions of her supervisor and Plaintiff's ADA accommodation was discussed. (D.I. 33 at Ex. 28 at 1-5) Plaintiff threatened to "jump out this [] building and kill myself, because I deserve to die." (*Id.* at 8) On the same day, Defendant HR assistant Patty Moore ("Moore") told Plaintiff to go to the Employee Assistant Program for evaluation by a social worker before returning to work. That day she was placed on paid leave, pending a fitness for duty evaluation. (D.I. 36 at Ex. 68)

Plaintiff alleges that from July 2015 to March 2016,[1] Moore "kept on forcing" Plaintiff take short term disability, but Hartford (the insurer) kept denying the claim. In October 2015, Plaintiff engaged in unsuccessful EEOC mediation. On November 4, 2015, Plaintiff was advised that if Moore did not receive Family Medical Leave Act ("FMLA") paperwork or disability approval, she would be placed on unpaid status effective November 10, 2015. (D.I. 36 at Ex. 68) Plaintiff

---

[1] The dates seem to be a typographical error as they read from "July 2015 to March 2015." (D.I. 32 at ¶ 23) The Court presumes the date is March 2016, not March 2015.

2

alleges that on December 9, 2015, she filed a request for review before the Delaware Merit Board. Plaintiff filed for workers' compensation in December 2015. She alleges that Moore never submitted the paperwork for Plaintiff to receive workers' compensation.

On January 29, 2016, Moore advised Plaintiff that she was considered to have abandoned her job because the JP Court had not received FMLA paperwork and disability had not been approved; the JP Court was recommending Plaintiff's dismissal from employment. (D.I. 36 at Ex. 68) Plaintiff was advised that she was entitled to a pre-decision meeting. (*Id.*) A pre-decision meeting was scheduled for February 22, 2016, upon Plaintiff's request. (*Id.* at Ex. 70) Plaintiff did not attend the meeting but sent a letter for review. (*Id.*) A March 4, 2016 letter advised Plaintiff of her dismissal, effective March 5, 2016. (*Id.*) Plaintiff alleges that the JP Court would not allow her to take workers' compensation and, as a result, her employment was terminated in March 2016 on the grounds that she had abandoned her job.

Plaintiff filed a charge of discrimination on December 18, 2014, alleging discrimination by reason of disability, No. 17C-2014-00762, and then filed a charge of discrimination alleging retaliation after her employer the State of Delaware Justice of the Peace Court received notification of the charge in February 2015, Charge No. 530-2015-03643. Charge No. 530-2015-03643 is not dated, but it appears to have been filed sometime after July 2, 2015. (*See* D.I. 35 at 9-10) Plaintiff commenced this action on December 22, 2015. (D.I. 2) On August 15, 2017, Plaintiff filed two right to sue letters, both dated July 27, 2017, for EEOC Charge Nos. 17C-2014-00762 and 530-2015-03643. (D.I. 27)

The Second Amended Complaint asserts: (1) employment discrimination under Title VII ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (2) employment discrimination and retaliation in violation of Titles I and V of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*;

3

(3) violations of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-4335; and (4) Delaware Merit Rules claims. (*See* D.I. 32) Plaintiff alleges that the discriminatory acts occurred from June 2013 through March 2016, when her employment was terminated. (*See id.*) Counts One, Three, Five, and Six are raised against Kruiser, Manelski, Oliver, Hitch, Dutton, Moore, and the JP Court and allege unfair treatment, retaliation, denial of employment benefits, and the termination of "Plaintiff's employment was the result of disability discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990, [] and Delaware Merit Rules." Count Two is raised against an unnamed assistant personnel director and employee benefits representative and alleges Plaintiff's loss of pension "was the result of military service discrimination in violation of" USERRA, 38 U.S.C. § 4301 *et seq.*, 20 C.F.R. Part 102, and Delaware Merit Rules. Count Four is raised against Hitch and Moore and alleges offensive touching in violation of Title 11[2] and Delaware Merit Rules.[3] Plaintiff seeks lost wages and compensatory and punitive damages.

Defendants move for dismissal on the following grounds: (1) the Second Amended Complaint is devoid of a single allegation implicating discrimination based upon a category protected by Title VII; (2) the ADA claims should be dismissed as a matter of law; and (3) the Court lacks jurisdiction to hear the USERRA claim against the state, the USERRA claims against the individual defendants in their official capacities should be dismissed, and the USERRA claims are deficiently pled.

---

[2] The Second Amended Complaint does not identify a specific provision in Title 11.

[3] There are other individuals named in the caption of the Second Amended Complaint who are not mentioned in the body of the Second Amended Complaint.

4

## III. LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

5

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996). Because Plaintiff proceeds *pro se*, her pleading is liberally construed and her Second Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

## IV. DISCUSSION

### A. Title VII

The Court will dismiss the Title VII claims. Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Second Amended Complaint contains no allegations that Plaintiff is a member of any of the classes protected from discrimination under Title VII.

In addition, as discussed in the Court's September 14, 2017 memorandum opinion (*see* D.I. 29), other than the ADA claims, Plaintiff has not provided documents to the Court to satisfy the administrative exhaustion requirements for any other employment discrimination claims. Plaintiff must comply with the procedural requirements set forth in Title VII before bringing employment discrimination claims under Title VII. *See Story v. Mechling*, 214 F. App'x 161, 163 (3d Cir. Jan. 19, 2007) (plaintiff may not proceed with Title VII claim because he neither received right to sue letter nor submitted evidence indicating that he requested right to sue letter); *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).

The Title VII claims fail as a matter of law. Therefore, the Court will grant the motion to dismiss the Title VII claims.

**B.    ADA**

The Second Amended Complaint raises employment discrimination claims based upon a disability and retaliation claims based upon the exercise of rights under Title I and Title V of the ADA. The claims are raised against the JP Court and individual State employees.

Title I of the "ADA prohibits certain employers, including the States, from discriminating against a qualified individual with a disability because of the disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms conditions, and privileges of employment." *Koslow v. Pennsylvania*, 302 F.3d 161, 177 (3d Cir. 2002) (quoting *Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360-61 (2001) (alterations in original)). Section 12203 of Title V of the ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C. §§ 12101-12213. Claims under Title I and V of the ADA brought to recover money damages from a State are barred by the Eleventh Amendment. *See Garrett*, 531 U.S. at 360; *see also Bowers v. NCAA*, 475 F.3d 524, 551 (3d Cir. 2007) ("[T]he Eleventh Amendment bars suits seeking money damages for state violations of Title I of the ADA."); *Karam v. State of Delaware Division of Services for Children, Youth and Their Families*, 2010 WL 5343182, at *3-5 (D. Del. Dec. 15, 2010) (State immune from Title V retaliation claims premised upon Title I claims).

In addition, the discrimination claims raised against the individual defendants fail as a matter of law as there is no individual liability under Title I. *See Koslow*, 302 F.3d at 178 (no individual liability for damages under Title I of the ADA). Although the Third Circuit has not yet decided the issue of individual liability under Title V of the ADA, other courts have concluded that there can be no individual liability under Title V when the claim is based on retaliation for the exercise of rights

7

under Title I of the ADA. *See e.g., Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999); *Baird v. Rose*, 192 F.3d 462, 471-72 (4th Cir. 1999); *Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711, 719 (D. Del. 2008); *Douris v. Schweiker*, 229 F. Supp. 2d 391, 397 (E.D. Pa. 2002), *aff'd*, 100 F. App'x 126 (3d Cir. May 13, 2004); *see also Datto v. Harrison*, 664 F. Supp. 2d 472, 491 (E.D. Pa. 2009) (interpreting § 12203 to prohibit individual claims of liability is "appropriate in employment cases because, under § 12203(c), retaliation claims in that context apply the remedies of Title I of the ADA, which incorporates the remedies of Title VII"); *Blades v. Mosaic of Delaware*, 2017 WL 3868238 (D. Del. Aug. 31, 2017) (dismissing Title V ADA retaliation claim against individual defendants). Considering the foregoing, the Court is persuaded that Plaintiff's Title V retaliation claim may not be maintained against the individual defendants.

Accordingly, the Court will grant Defendants' motion to dismiss the ADA claims raised by Plaintiff in the Second Amended Complaint.

### C. USERRA

The USERRA was enacted to ensure that civilian employees are not adversely treated by employers, within the context of civilian employment, because of the employee's military status. *See Tucker v. Wynne, Inc.*, 2009 WL 2448520, at *5 (D.N.J. Aug. 10, 2009). USERRA's provisions are to prevent and/or compensate service members for employment discrimination based on military status. *See Gordon v. Wawa*, 388 F.3d 78, 85 (3d Cir. 2004).

As previously discussed, the Second Amended Complaint is brought against the JP Court and individual JP Court employees. It does not indicate if the claims raised against the individual defendants are brought against them in their individual capacities, their official capacities, or both. Defendants move to dismiss for lack of jurisdiction against the JP Court and against the individual defendants for failure to state claims upon which relief may be granted.

8

An employer violates USERRA if "the person's membership [in the military] is a motivating factor in the employer's action." 38 U.S.C. § 4311(c)(1). An employer, however, does not violate the Act if "the employer can prove that the action would have been taken in the absence of such membership." *Id.*

USERRA articulates three separate types of claims and identifies which courts have jurisdiction over those claims, as follows:

> (b) Jurisdiction. (1) In the case of an action against a State (as an employer) or a private employer commenced by the United States, the district courts of the United States shall have jurisdiction over the action. (2) In the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent jurisdiction in accordance with the laws of the State. (3) In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action.

38 U.S.C. § 4323(b).

Plaintiff's action arises under § 4323(b)(2), as she commenced this action against the State as her employer and she is a person. Although there is no Third Circuit or District of Delaware precedent, several courts have found that § 4323(b)(2) divests federal courts of jurisdiction against States as employers. *See MacMillan v. Pennsylvania Air Nat'l Guard*, 2018 WL 2730883, at *1 (W.D. Pa. 2018). "Section 4323(b)(2)'s seemingly permissive language (*i.e.*, 'may be brought') has been interpreted to constrain jurisdiction to state courts in USERRA actions against states as employers." *Id.* (citing *Wood v. Florida Atlantic Univ. Bd. of Trustees*, 432 F. App'x 812, 815 (11th Cir. June 23, 2011)); *McIntosh v. Partridge*, 540 F.3d 315, 321 (5th Cir. 2008) (after examining text of statute in current and prior forms, finding no unmistakable clear intention by Congress to abrogate state sovereign immunity by allowing individuals to bring USERRA claims against states as employers in federal court); *see also Velasquez v. Frapwell*, 165 F.3d 593 (7th Cir. 1999) ("Congress's intention to limit USERRA suits against states to state courts is unmistakable."); *Townsend v. University of Alaska*, 543 F.3d 478, 485 (9th Cir. 2008) (district court correctly dismissed suit against State for lack of

9

subject matter jurisdiction); *Bodrog v. New Jersey State Police*, 2018 WL 2411615 (D.N.J. May 29, 2018) (USERRA claim barred by Eleventh Amendment). In light of the foregoing, the Court will grant Defendants' motion to dismiss for want of jurisdiction.

Finally, to the extent Plaintiff names JP Court employees as defendants, the claims are not actionable given that Plaintiff's employer was the State. In this regard, the Court adopts the reasoning of *Townsend*, 543 F.3d at 486:

> USERRA expressly creates only two private causes of action: (1) an action brought by an individual against a State (as an employer). . .; and (2) an action brought against a private employer. . . *See* 38 U.S.C. § 4323(a)(2). Despite the plain text of the statute, Townsend argues that USERRA also creates a cause of action against the supervisors, because the Act defines "employer" to include "a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities," 38 U.S.C. § 4303(4)(A)(i) . . ., and the supervisors are persons. The USERRA cause of action, however, arises against "a State (as an employer)." *See id.* § 4323(a)(2). Individual supervisors are not included in the definition of "State." *See id.* § 4303(14) (defining "State"). Although the cause of action can be brought against a "State (as an employer)," "as an employer" describes the capacity in which the State can be sued; it does not create a cause of action against individual state employees even if they exercise supervisory responsibility. Thus, an action under USERRA is available only against the State "as an employer," and not in some other capacity. . . . Thus, Townsend's attempt to sue individual supervisors under the cause of action which the Act provides against a "State (as an employer)" fails. Nor are the individual state supervisors "private employers." While the supervisors may fit under the definition of "employer," we agree with the district court that it would do violence to the language of the statute to consider a state employee-supervisor a "private employer."

*See also Rimando v. Alum Rock Union Elementary Sch. District*, 356 F. App'x 989, 991 (9th Cir. Dec. 15, 2009) (affirming dismissal of plaintiff's individual liability claim against supervisor because it was "foreclosed by [the court's] holding in *Townsend*"). Plaintiff's claims against the JP Court employees are not cognizable and, therefore, they will be dismissed.

Defendants' motion to dismiss the USERRA claim will be granted.

### D. Delaware Merit Rules

Finally, the Second Amended Complaint alleges that Plaintiff's unfair treatment violated Delaware Merit Rules, but it is simply not clear how this may have occurred. To the extent the Merit Rules apply to Plaintiff, the Merit System of Personnel Administration provides "[t]he exclusive remedy available to a classified employee for the redress of an alleged wrong, arising under any misapplication of any provision of this chapter, the merit rules, or the Director's regulations adopted thereunder, is to file a grievance in accordance with the procedure stated in the merit rules." *Gumbs v. Delaware Dep't of Labor*, 2016 WL 3475217, at *2 (Del. Super. June 16, 2016) (quoting 29 Del. C. § 5943(a)). The Merit Rules provide a grievance process after which the matter proceeds to the Merit Employee Relations Board, and then, if an employee is not satisfied with the decision, he or she may take an appeal to the Superior Court. *Id.* As pled, the Court cannot discern if Plaintiff was considered a classified employee and, if so, whether she followed the proper procedure before raising this claim in the Second Amended Complaint. Finally, the Delaware Merit Rules claims are pled in a conclusory manner and do not meet the pleading standards of *Twombly* and *Iqbal.*

The Court will dismiss the Delaware Merit Claims.

### E. Supplemental Jurisdiction

Because the Second Amended Complaint fails to state a federal claim, the Court declines to exercise jurisdiction over Plaintiff's supplemental Delaware Merit Rule claims. *See* 28 U.S.C. § 1367; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003).

## V. CONCLUSION

For the above reasons, the Court will: (1) grant Defendants' motion to dismiss (D.I. 35); and (2) decline to exercise supplemental jurisdiction. Amendment of the federal claims is futile.

An appropriate Order will be entered.